UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO AMADOR GONZALEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>DR. SCHARFFENBERG, et al.,<br><br>    Defendants. | 1:16-cv-01675-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS BE GRANTED IN PART AND DENIED IN PART<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS<br><br>(ECF NO. 64) |

Mario Amador Gonzalez ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his second amended complaint on June 1, 2016. (ECF No. 25). Plaintiff's second amended complaint alleges that certain prison officials failed to report a medical emergency and that medical staff at first refused to remove Plaintiff's catheter, which was causing him severe pain, before removing the catheter the next day with an improper deflation kit causing further injury to Plaintiff. (Id.). Plaintiff primarily claims that the officials and medical staff acted with deliberate indifference in violation of the Eighth Amendment and alleges due process and equal protection claims for violations of the Fourteenth Amendment.

On December 5, 2016, Defendants C.O. Archuleta, Sgt. Chan, Sgt. Devine, R.N. Padilla, Dr. Scharffenberg, Warden Sherman, and R.N. Soto ("Defendants") filed a 12(b)(6) motion to dismiss. (ECF No. 64). On January 3, 2017, Plaintiff filed an opposition to Defendants' motion to dismiss. (ECF No. 65). On January 9, 2017, Defendants filed a reply to Plaintiff's opposition. (ECF No. 66). Defendants' motion to dismiss is now before the Court. For the reasons described below, the Court recommends that Defendants' motion to dismiss be

granted in part and denied in part.

## I.     SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff alleges in his second amended complaint (ECF No. 25) that on December 9, 2013, at or around 2:30 p.m., Plaintiff was discharged from Mercy Hospital in Bakersfield. Later in the evening, at around 7:30 p.m. Plaintiff was sent to the institution's C.T.C./T.T.A as he "complained of excruciating pain in relations [sic] to [his] catheter." He informed Defendant R.N. Soto that he wanted his catheter removed as he was in great pain and discomfort. Defendant R.N. Soto advised him that Defendant R.N. Soto could not do so without a doctor's order. Plaintiff believes that at that point a doctor's order should have been obtained to remove the catheter. It is his belief that the failure to obtain a doctor's order resulted in permanent injury.

On December 10, 2013, at or around 10:00 a.m., Defendant Dr. Scharffenberg advised Plaintiff that his catheter was to remain in place for one week. Plaintiff complained of excruciating pain and requested that the catheter be removed.

At or around 10:45 a.m. that same day, Defendant R.N. Padilla was ordered by Defendant Dr. Scharffenberg to provide a catheter deflation kit. However, when Defendant R.N. Padilla returned she informed Defendant Dr. Scharffenberg that they did not have the right size deflation syringe kit. Defendant R.N. Padilla then asked Defendant Dr. Scharffenberg, "Would you like me to remove the catheter?"

Defendant Dr. Scharffenberg stated that he himself could do it with the wrong size deflation kit. As Plaintiff complained of excruciating pain, Defendant Dr. Scharffenberg repeatedly badgered Plaintiff with statements such as "cut the show," "what's with the show," and "you need to be more mature, it's just a catheter."

Defendant Dr. Scharffenberg removed the catheter "knowingly and willingly using the wrong kit." Defendant Dr. Scharffenberg "failed to deflate the balloon valve properly yet he continued. [He] yanked on the catheter when he noticed resistance [he] pushed the catheter further back into [Plaintiff's] penile hole," causing Plaintiff further pain. Plaintiff claims that as a result he sustained permanent injury.

Plaintiff further alleges that at or around 11:00 a.m. Plaintiff informed Defendant C.O. Archuleta that he had a medical emergency, but that Defendant C.O. Archuleta failed to do anything.

At 12:00 p.m. or shortly thereafter, Plaintiff reported to Defendant Sgt. Chan that he had a medical emergency. He was advised by Defendant Sgt. Chan that medical was aware of his condition. However, Defendant Sgt. Chan did not report the medical emergency.

At or around 3:30 p.m. Plaintiff informed Defendant Sgt. Devine of his medical emergency. Defendant Sgt. Devine never reported the emergency.

At or around 4:00 p.m. Plaintiff informed Defendant C.O. Ceja that he was suicidal. Plaintiff states that "this was mental anguish plus desperation to receive help. [He] was bleeding from [his] penile hole and was suffering with pain" and that Defendant "Dr. Scharffenberg was torturing [him] to the point of having suicidal thoughts."

Plaintiff eventually received a Toradol 60 mg injection and was taken to Mercy Bakersfield by ambulance.

Plaintiff further alleges that Defendant Warden Sherman "failed to adequately train his staff for medical emergency response. He failed to properly supervise his subordinates as a result [Plaintiff] suffered serious and permanent injury"

For relief, Plaintiff requests compensatory and punitive damages for the constitutional violations, as well as for defendants to be accountable for potential "future medical bills requiring surgeries etc. . ." Plaintiff would "like to be returned to the same condition before aforementioned constitutional violations occurred. This includes mental suffering, punitive damages for wrongful conduct oppressively applied with recklessness amounting to said deliberate indifference."

## II. DEFENDANTS' MOTION TO DISMISS

Defendants filed a motion to dismiss on December 5, 2016. (ECF No. 64). Defendants argue that Plaintiff has not stated sufficient facts for any of the Eighth or Fourteenth Amendment claims against any of the defendants.

On January 3, 2017, Plaintiff filed an opposition to Defendants' motion to dismiss.

(ECF No. 65).  Plaintiff's opposition appears to be missing the second page and therefore the opposition only addresses Plaintiff's Eighth Amendment claims.[1]

Plaintiff's opposition contains additional facts that are not present in the second amended complaint.  Such allegations included additional statements regarding Defendant Soto and that "Operations Manual (DOM) for CDCR prison clearly says that at least one doctor must be present at [the] facility 24/7.  Because of that, Defendant Soto['s] refusal to remove [the] catheter because there is no doctor around to approve it, is false.  He was well informed that there must be a doctor for emergencies, which means that he willfully and deliberately ignored Plaintiff's request to remove catheter because of overwhelming pain and suffering.  It is hard to believe that [Defendant] Soto was not aware that [an] inserted catheter can be cause of severe pain.  As a result of delay of removing catheter properly, Plaintiff was forced to have surgery and even face amputation of his penis which definitely represents a serious injury." (ECF No. 65, p. 2). In regards to Defendant Dr. Scharffenberg, Plaintiff added that Defendant Dr. Scharffenberg "willfully and deliberately acted against proper medical procedure and against wishes of his patient.  It is certainly not negligence.  He was well aware of patient's pain and suffering yet he even increased pain with no remorse and total disregard for proper medical procedure."  (Id. at p. 3).

On January 9, 2017, Defendants filed a reply to Plaintiff's opposition, which addressed the new factual allegations and argued that even with the new facts Plaintiff's Eighth Amendment claims still fail.  (ECF No. 66).

### III.   LEGAL STANDARD FOR MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true.  Erickson v. Pardus, 551 U.S. 89, 93–94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976).  The court must also construe the alleged facts in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236, overruled on

---

[1] Defendant's stated in their reply to Plaintiff's opposition that they received a paper copy of Plaintiff's opposition that included the missing page on January 9, 2016. (ECF No. 66, at p. 2).  Defendants state that "the missing page contains a continuation of Section I, 'Divide and Conquer,' and Section II, 'Due Process.'" Id.

other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236 (1974).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley, 355 U.S. at 45-46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

outside the complaint and pleadings. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077, 1083 (9th Cir. 2001).

### IV.   EVALUATION OF PLAINTIFF'S EIGHTH AMENDMENT CLAIMS

The Court begins its analysis with Plaintiff's Eighth Amendment claims against the various defendants. "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not

become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

### A. The complaint establishes an Eighth Amendment claim against Defendant R.N. Soto

Plaintiff alleges that Defendant R.N. Soto would not remove Plaintiff's catheter on December 9, 2013, around 7:30 p.m., and that R.N. Soto "advised [plaintiff] that he could not do so without a doctor's order." The complaint indicates that Defendant Soto did not get a doctor's order and there is nothing to indicate that Defendant Soto even reported Plaintiff's medical needs to a doctor staffed at the hospital. There were no attempts to remove the catheter on December 9, 2013, and in fact the catheter was not removed until the next day at 10:45 a.m., a period of roughly nine hours later.

The Court is sympathetic to Defendant's position and it may very well be that facts will be insufficient to establish deliberate indifference on the part of R.N. Soto. However, construing the facts liberally in favor of Plaintiff, as the Court must, the Court recommends allowing this claim to proceed past the pleading stage. Taking the facts as true, this was not a question of different medical opinions—Defendant Soto just failed to make any attempt to care for Plaintiff's medical situation and left it until the next day despite extreme pain. It is possible that a jury could find deliberate indifference to serious medical needs based on these facts. Thus, the Court recommends holding that Plaintiff has asserted an Eigth Amendment Claim based on deliberate indifference to serious medical needs against Defendant Soto.

### B. The complaint establishes an Eighth Amendment claim against Defendant Dr. Scharffenberg

Plaintiff claims that on December 10, 2013, at or around 10:00 a.m., Defendant Dr. Scharffenberg advised Plaintiff that his catheter was to remain in place for one week. Plaintiff requested that the catheter be removed because he was experiencing excruciating pain. Apparently based on this request, at around 10:45 a.m., Defendant Dr. Scharffenberg ordered

Defendant R.N. Padilla to provide a catheter deflation kit so that the catheter could be removed. The kit was the incorrect size, but Defendant Dr. Scharffenberg said that he could still remove the catheter. Plaintiff alleges that Defendant Dr. Scharffenberg failed to deflate the balloon valve properly yet continued with the removal and that Defendant Dr. Scharffenberg yanked on the catheter when he noticed resistance. Defendant Dr. Scharffenberg pushed the catheter further back into Plaintiff's penile hole, causing Plaintiff further pain. Plaintiff claims that as a result he has sustained permanent injury and that Defendant "Dr. Scharffenberg was torturing [him] to the point of having suicidal thoughts."

Construing the facts in favor of Plaintiff, the Court recommends allowing Plaintiff's deliberate indifference claim to proceed against Defendant Scharffenberg as well. Plaintiff has alleged facts indicating a purposeful indifference to Plaintiff's pain by alleging that Defendant Dr. Scharffenberg repeatedly badgered Plaintiff with statements such as "cut the show," "what's with the show," and "you need to be more mature, it's just a catheter." Defendant Dr. Scharffenberg eventually did remove the catheter, but he allegedly used the wrong sized kit, and failed to deflate the balloon valve properly. The compliant further alleges that Plaintiff had needed surgery after the catheter was removed..

Therefore, taking the facts in Plaintiff's second amended complaint as true, and construing them liberally in favor of Plaintiff, the Court finds that Plaintiff has stated a cognizable claim against Defendant Dr. Scharffenberg. Accordingly, the Court will recommend that Plaintiff's Eighth Amendment claim proceed against Defendant Dr. Scharffenberg.

**C. The complaint fails to establish an Eighth Amendment claim against Defendant R.N. Padilla**

At or around 10:45 a.m. Defendant R.N. Padilla was ordered by Defendant Dr. Scharffenberg to provide a catheter deflation kit. However, when Defendant R.N. Padilla returned she informed Defendant Dr. Scharffenberg that they did not have the right size deflation syringe kit.

The complaint does not contain any facts that indicate that Defendant R.N. Padilla acted with deliberate indifference. The complaint in fact alleges that all Defendant R.N. Padilla did was retrieve and then give the available deflation syringe kit to Defendant Dr. Scharffenberg at Defendant Dr. Scharffenberg's request. Her involvement was minimal and the complaint does not sufficiently support an Eighth Amendment Claim against Defendant R.N. Padilla. Accordingly, the Court will recommend that Plaintiff's Eighth Amendment claim against Defendant R.N. Padilla be dismissed.

**D. The complaint fails to establish an Eighth Amendment claim against Defendants C.O. Archuleta, and Sgt. Devine**

Plaintiff's claims against Defendants C.O. Archuleta, Sgt. Chan and Sgt. Devine are nearly identical: Plaintiff alleges that at different times he reported that he had a medical emergency to these Defendants, but that all three failed to report the medical emergency to medical staff. The second amended complaint alleges further that Defendant Sgt. Chan specifically advised Plaintiff that the medical staff was aware of Plaintiff's condition. According to Plaintiff, he was taken to the hospital later that day after his interactions with these three Defendants. Therefore, it is clear that medical staff was indeed aware of Plaintiff's medical needs.

Based on the facts alleged, Plaintiff has failed to state a claim against any of these defendants for deliberate indifference to Plaintiff's serious medical needs. Plaintiff simply fails to allege enough facts that, if true, would show that any of these three Defendants acted in a manner that was deliberately indifferent to Plaintiff's serious medical needs. In fact, according to Plaintiff, Defendant Sgt. Chan specifically advised Plaintiff that medical staff already knew of Plaintiff's condition. Because Defendant Sgt. Chan apparently thought medical staff already knew of Plaintiff's conditions, he would have no reason to tell medical staff about Plaintiff's condition. Even if Defendant Sgt. Chan was mistaken in his belief that medical staff was informed, it would not rise to the level of *deliberate* indifference. At most, it would appear to be negligence.

Additionally, the Court notes from Plaintiff's previous statements to the Court that a second guard may have also informed Plaintiff that medical staff was aware of Plaintiff's medical condition and that save for Plaintiff's conclusory allegation, there appears to be no factual allegations that would show the guard was lying. Accordingly, the Court will recommend dismissal of this claim against Defendants C.O. Archuleta, Sgt. Chan and Sgt. Devine.

### E. The complaint fails to establish an Eighth Amendment claim against Defendant Warden Sherman

Plaintiff alleges that Defendant Warden Sherman "failed to adequately train his staff for medical emergency response.  He failed to properly supervise his subordinates as a result [Plaintiff] suffered serious and permanent injury directly a violation of [Plaintiff's] 8th Amendment right to be free from cruel and unusual punishment as well violated [Plaintiff's] 14th amendment right of due process an equal protection."  (ECF No. 25, at p. 8).  Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009).  In other words, there must be an actual connection or link between the actions of the Defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 695 (1978).

Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Lemire v. Cal. Dept. of Corrections & Rehabilitation, 726 F.3d 1062, 1074-75 (9th Cir. 2013) ("A prison official in a supervisory position may be held liable under § 1983 . . . 'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'") (quoting Lolli v. Cty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003)).  Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

With this law in mind, Plaintiff's complaint fails to state a claim against Defendant Sherman. The second amended complaint does not allege that Defendant Sherman personally did anything to Plaintiff. Instead, it in essence only recites the elements of the cause of action: "[Defendant] Sherman . . . failed to adequately train his staff for medical emergency response. He failed to properly supervise his subordinates" and as a result Plaintiff suffered injury. (ECF No. 25, p. 8). This is insufficient.

Further, even if the Court were to consider Plaintiff's new allegation listed in his opposition to Defendants' motion to dismiss (ECF No. 65), the claim would still fail. In Plaintiff's opposition, he states that Defendant Sherman initiated a policy for officers and superiors to "disregard medical attention prisoners." (Id. at p. 3). However, Plaintiff provides no facts supporting this allegation. In fact, what Plaintiff alleges in his opposition contradicts his second amended complaint in that Plaintiff himself was treated on multiple occassions. Plaintiff's complaint alleges that he was in a hospital before and after the incidents described therein, and that he did in fact see medical personnel concerning his medical needs. This strongly suggests that there was no policy for officers and superiors to ignore prisoners' medical needs. Accordingly, this claim against Defendant Sherman fails and should be dismissed.

## V.    EVALUATION OF PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Plaintiff also alleges that his Fourteenth Amendment right to equal protection was violated. The equal protection clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Shakur v.

Schiriro, 514 F.3d 878, 891 (9th Cir. 2008). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of plaintiff's membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 601-02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

While Plaintiff's alleges Fourteenth Amendment violations, the complaint states no facts that show Plaintiff experienced a due process or equal protection violation. The complaint simply states that Plaintiff's rights to due process and equal protection were violated. Plaintiff's complaint fails to allege any facts that show he was treated differently from similarly situated individuals, or that he was deprived of any right without due process of law. The conclusory statements in the seconded amended complaint are not enough to state a claim under the Fourteenth Amendment. Accordingly, Plaintiff fails to state a claim for violation of the equal protection clause or the due process clause as to any defendant and the Fourteenth Amendment claims should be dismissed.

### VI.   CONCLUSION AND RECOMMENDATION

Accordingly, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1) Defendants' motion to dismiss filed on December 5, 2016 (ECF No. 64) be GRANTED IN PART and DENIED IN PART;

2) Plaintiff's Second Amended Complaint (ECF No. 25) be allowed to proceed with (1) an Eighth Amendment claim against Defendant R.N. Soto for deliberate indifference to serious medical needs; and (2) an Eighth Amendment claim against Defendant Dr. Scharffenberg for deliberate indifference to serious medical needs; and

3) All other defendants and causes of action be dismissed.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **thirty (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within **ten (10) days** after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 22, 2017**            /s/ Erica P. Grosjean
                                           UNITED STATES MAGISTRATE JUDGE