# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO AMADOR GONZALEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>DR. SCHARFFENBERG and R.N. S. SOTO,<br><br>    Defendants. | Case No. 1:16-cv-01675-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 123)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

## I.    BACKGROUND

Mario Gonzalez ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This action is now proceeding on Plaintiff's Second Amended Complaint (ECF No. 25), on Plaintiff's Eighth Amendment claims against defendants R.N. Soto and Dr. Scharffenberg for deliberate indifference to serious medical needs. (ECF No. 94, p. 2).

On June 25, 2018, Defendants filed a motion for summary judgment. (ECF No. 123).[1] On November 13, 2018, Plaintiff filed his opposition to the motion. (ECF No. 152). On November 20, 2018, Defendants filed a notice of errata (ECF No. 153), a reply to Plaintiff's opposition (ECF No. 154), and a reply to Plaintiff's response to Defendants' statement of undisputed facts, including evidentiary objections (ECF No. 155). On December 12, 2018,

---

[1] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

1

Plaintiff filed a notice of errata. (ECF No. 159). On January 16, 2019, Plaintiff re-filed page sixteen of his opposition, signed under penalty of perjury. (ECF No. 163, p. 3).

Defendants' motion for summary judgment is now before the Court. For the reasons that follow, the Court will recommend that Defendants' motions for summary judgment be granted.

## II. SUMMARY OF SECOND AMENDED COMPLAINT AND CURRENT CLAIMS

Plaintiff alleges that on December 9, 2013, at or around 2:30 p.m., Plaintiff was discharged from Mercy Hospital in Bakersfield. Later in the evening, at around 7:30 p.m., Plaintiff was sent to the institution's C.T.C./T.T.A as he "complained of excruciating pain in relations [sic] to [his] catheter." He informed Defendant R.N. Soto that he wanted his catheter removed as he was in great pain and discomfort. Defendant Soto advised him that Defendant Soto could not do so without a doctor's order. Plaintiff believes that at that point a doctor's order should have been obtained to remove the catheter. It is his belief that the failure to obtain a doctor's order resulted in permanent injury.

On December 10, 2013, at or around 10:00 a.m., Defendant Dr. Scharffenberg advised Plaintiff that his catheter was to remain in place for one week. Plaintiff complained of excruciating pain and requested that the catheter be removed.

At or around 10:45 a.m. that same day, Defendant R.N. Padilla was ordered by Defendant Scharffenberg to provide a catheter deflation kit. However, when Defendant Padilla returned she informed Defendant Scharffenberg that they did not have the right size deflation syringe kit. Defendant R.N. Padilla then asked Defendant Dr. Scharffenberg, "Would you like me to remove the catheter?"

Defendant Dr. Scharffenberg stated that he himself could do it with the wrong size deflation kit. As Plaintiff complained of excruciating pain, Defendant Scharffenberg repeatedly badgered Plaintiff with statements such as "cut the show," "what's with the show," and "you need to be more mature, it's just a catheter."

Defendant Scharffenberg removed the catheter "knowingly and willingly using the

wrong kit." Defendant Scharffenberg "failed to deflate the balloon valve properly yet he continued. [He] yanked on the catheter when he noticed resistance [he] pushed the catheter further back into [Plaintiff's] penile hole," causing Plaintiff further pain. Plaintiff claims that as a result he sustained permanent injury.

Plaintiff further alleges that at or around 11:00 a.m., Plaintiff informed Defendant C.O. Archuleta that he had a medical emergency, but that Defendant Archuleta failed to do anything.

At 12:00 p.m. or shortly thereafter, Plaintiff reported to Defendant Sgt. Chan that he had a medical emergency. He was advised by Defendant Chan that medical was aware of his condition. However, Defendant Sgt. Chan did not report the medical emergency.

At or around 3:30 p.m. Plaintiff informed Defendant Sgt. Devine of his medical emergency. Defendant Devine never reported the emergency.

At or around 4:00 p.m. Plaintiff informed Defendant C.O. Ceja that he was suicidal. Plaintiff states that "this was mental anguish plus desperation to receive help. [He] was bleeding from [his] penile hole and was suffering with pain" and that Defendant "Dr. Scharffenberg was torturing [him] to the point of having suicidal thoughts."

Plaintiff eventually received a Toradol 60 mg injection and was taken to Mercy Bakersfield by ambulance.

Plaintiff alleges that Defendant Warden Sherman "failed to adequately train his staff for medical emergency response. He failed to properly supervise his subordinates as a result [Plaintiff] suffered serious and permanent injury."

Plaintiff alleges that Defendants Edmund G. Brown Jr., Kelly Harrington, and J. Beard/Scott Kernan are responsible for illegal and unconstitutional policies, customs, and practices that caused Plaintiff's injuries, and that these defendants will continue to cause Plaintiff injury in the future.

For relief, Plaintiff requests compensatory and punitive damages for the constitutional violations, as well as for defendants to be accountable for potential "future medical bills requiring surgeries etc…." Plaintiff would "like to be returned to the same condition before aforementioned constitutional violations occurred. This includes mental suffering, punitive

damages for wrongful conduct oppressively applied with recklessness amounting to said deliberate indifference."

On December 5, 2016, defendants R. Devine, S. Sherman, A. Chan, S. Soto, M. Archuleta, M. Padilla, and R. Scharffenberg filed a motion to dismiss. (ECF No. 64). The motion was granted in part. (ECF No. 72). Plaintiff was "permitted to proceed on his Eighth Amendment claims against defendants R.N. Soto and Dr. Scharffenberg for deliberate indifference to serious medical needs," and all other claims and defendants were dismissed. (Id. at 3-4; ECF No. 94, p. 2).

### III. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

#### a. Defendants' Argument

"Defendants move for summary judgment on the grounds that Plaintiff did not have a serious medical need for the removal of his catheter, Defendants provided him constitutionally adequate care, and Plaintiff's injury was caused by his refusal of medically necessary treatment. Alternatively, Defendants are entitled to qualified immunity because no reasonable medical provider in their respective positions would believe that their conduct violated the Eighth Amendment, and the law was not clearly established that Defendants' conduct violated the Eighth Amendment." (ECF No. 123-2, p. 2).

As to defendant RN Soto, while Plaintiff told defendant Soto that he wanted the catheter removed, defendant Soto was not permitted to remove Plaintiff's catheter without a doctor's order. (ECF No. 123-2, p. 7). Defendant Soto explained to Plaintiff that the catheter needed to remain in place to treat his urinary retention. (Id. at 7-8). He also examined Plaintiff, and then notified the on-call physician about Plaintiff's condition. (Id. at 8). Defendant Soto was informed that "per discharge instructions the catheter was to remain in place for seven days for treatment of urinary retention." (Id.). "Plaintiff was provided Tylenol #3 for his pain and educated regarding his condition." (Id.).

Defendants argue that not only did Plaintiff not have an objectively serious medical need for the removal of this catheter, he had a medical need for the catheter to remain in place to treat his urinary retention. (Id.). Moreover, defendant Soto discussed Plaintiff's condition

with a doctor (who ordered that the catheter remain in place), provided Plaintiff with pain medication, and educated him regarding his condition. (Id.). Thus, defendant Soto is entitled to summary judgment.

As to defendant Dr. Scharffenberg, Plaintiff "claims that Dr. Scharffenberg knowingly and willingly used the wrong catheter deflation kit when he removed Plaintiff's catheter and negligently pulled on the catheter before completely deflating the balloon, resulting in pain and permanent injury." (Id.). However, not only did Plaintiff not have an objectively serious medical need for the removal of this catheter, he had a medical need for the catheter to remain in place to treat his urinary retention. (Id.).

Moreover, defendant Scharffenberg was not deliberately indifferent to Plaintiff's medical needs. (Id. at 9). Defendant Scharffenberg could not have used the wrong size catheter deflation kit because there is no such thing as a catheter deflation kit. (Id.). "Instead, a standard syringe without a needle attached is used to deflate the balloon and the catheter may occasionally be pulled to determine whether the balloon has been sufficiently deflated to facilitate removal." (Id.). While the procedure likely caused Plaintiff some pain or discomfort, any such discomfort was incident to the removal procedure. (Id.). Additionally, the manner in which Plaintiff's catheter was removed did not cause Plaintiff's injury. (Id.). "Rather, to a reasonable degree of medical probability, the priapism Plaintiff developed following the removal of his catheter was caused by urinary retention and medications associated with priapism (similar to his previous two priapisms). Plaintiff's catheter was placed to treat his urinary retention, and his decision to prematurely remove the catheter against medical advice was the trigger for his priapism." (Id.) (footnote and citation omitted).

Finally, Defendants argue that, even if the Court finds that their actions violated the constitution, they are entitled to qualified immunity. (Id. at 10-11).

   b. **Plaintiff's Argument**

Plaintiff argues that Defendants are not entitled to qualified immunity because it was clearly established at the time of the incident that Defendants were prohibited from subjecting Plaintiff to cruel and unusual treatment. (ECF No. 152, p. 2). Moreover, Defendants' conduct

was so egregious that any reasonable official would have known that it violates the constitution. (Id. at 6).

Plaintiff argues that it is his right to refuse treatment and/or to discontinue treatment. (Id. at 3). However, defendant Soto did not speak with a doctor on December 9, 2013, and never attempted to get an order from a doctor to remove the catheter. (Id. at 2-3). Accordingly, defendant Soto was deliberately indifferent to Plaintiff's medical needs and is not entitled to qualified immunity. (Id. at 3).

As to defendant Scharffenberg, he was deliberately indifferent "in so many ways." (Id.). To begin, defendant Scharffenberg provides conflicting testimony. (Id.). Moreover, during the procedure, defendant Scharffenberg accused Plaintiff of putting on a show. (Id.). Additionally, defendant Scharffenberg struggled with the removal of Plaintiff's catheter, yanking on it while badgering Plaintiff. (Id. at 4). He then stopped the procedure to tell Plaintiff to cut the show, and to be more mature. (Id.).

Not only did defendant Scharffenberg cause pain by yanking on the catheter that was not properly deflated, on his second attempt to remove the catheter he shoved the catheter further back into the penile hole, increasing Plaintiff's pain. (Id.). After defendant Scharffenberg deflated the catheter, he watched as Plaintiff actively bled from his penis. (Id.). He then stated to custody staff, "he's done." (Id.).

After Plaintiff returned to his cell, he began to suffer from a priapism, a serious condition which can result in permanent injury. (Id. at 5). Despite numerous pleas to custody staff (who reported to medical staff), Plaintiff was left to suffer. (Id.). Eventually, Plaintiff was taken to a holding cage. (Id.). When a correctional officer asked why he was there, defendant Scharffenberg responded with "he's just being a hard ass!" (Id.). Defendant Scharffenberg never bothered to have Plaintiff examined again, despite custody staff alerting medical. (Id.).

Plaintiff was later hospitalized for thirteen days, and faced amputation. (Id.).

While Defendants argue that the priapism was triggered by medications and premature removal of the catheter, this is speculation on behalf of Defendants and their medical expert

6

witness. (Id. at 7).

### c. **Legal Standards**

#### *A. Summary Judgment*

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citing Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1981).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record… from which a reasonable inference… may be drawn…"; the court need not entertain inferences that are unsupported by fact. <u>Celotex</u>, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." <u>Anderson</u>, 477 U.S. at 255. Moreover, the Court must liberally construe Plaintiff's filings because he is a prisoner proceeding *pro se* in this action. <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

*B. Deliberate Indifference to Serious Medical Needs*

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). This requires a plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." <u>Id.</u> (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), <u>overruled on other grounds by</u> <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." <u>Jett</u>, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an

unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n. 5 (1994) (citations omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances… and… that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

### d. Analysis

To begin, the Court notes that Plaintiff alleges that Defendants withheld relevant medical records in an effort to prevent him from adequately presenting his case. (ECF No. 152, p. 7). However, as Defendants point out, Plaintiff has presented no evidence of this assertion. Moreover, the Court already addressed the issue of at least some allegedly missing medical records when denying Plaintiff's motion to compel that was filed on January 16, 2018 (ECF Nos. 89 & 96). As Plaintiff provided no evidence to substantiate this allegation, and as it appears that this issue has already been addressed, the Court will not readdress this issue. Moreover, it does not appear that the medical records that Plaintiff alleges were destroyed are relevant to the motion for summary judgment. They appear to relate to medical care that occurred approximately two years before the incidents alleged in the complaint, and would not

address the deficiencies in Plaintiff's evidence.

Turning to the merits of the motion, many of the relevant facts in this case are undisputed. On December 8, 2013, Plaintiff began complaining of abdominal pain. Defendants' Statement of Undisputed Facts ("DSUF") 8. On that same day Plaintiff was seen by a non-party nurse, who noted that Plaintiff's bladder felt distended. DSUF 9. Plaintiff told the nurse that he had a hard time peeing. Id. Plaintiff was transferred to Mercy Hospital Bakersfield, where he was treated for urinary retention secondary to prostatitis/Strattera. DSUF 10. Plaintiff was prescribed Flomax and antibiotics, his Strattera was discontinued, and he was given a Foley catheter, which was ordered to remain in place for seven days. DSUF 11. A Foley catheter is a flexible tube that is passed through the urethra and into the bladder to train urine. DSUF 12. It is secured using a balloon that is inflated with air or fluid inside the bladder. Id.

On December 9, 2013, Plaintiff was seen by defendant Soto in response to complaints of pain. DSUF 13. Plaintiff informed defendant Soto that he wanted the catheter removed. DSUF 14.[2] Defendant Soto was not permitted to remove Plaintiff's catheter without a doctor's order. DSUF 15. Defendant Soto explained to Plaintiff that the catheter needed to remain in place for seven days to treat his urinary retention, and that it could not be removed without a doctor's order. DSUF 16. Additionally, defendant Soto examined Plaintiff. DSUF 17. He noted no bladder distension, but did observe Plaintiff wince during the exam. Id. Defendant Soto observed a small amount of dried blood on the catheter, but this was not unusual. DSUF 18. During the visit, Plaintiff was also provided with Tylenol #3 for his pain and educated regarding his condition. DSUF 20.

On December 10, 2013, Plaintiff was seen by defendant Scharffenberg. DSUF 21. Plaintiff demanded that his catheter be removed immediately. DSUF 22. Plaintiff signed a refusal of treatment form for removal of the catheter against medical advice (DSUF 24), and

///

---

[2] While Plaintiff lists this fact as disputed in his opposition (ECF No. 152, p. 8), Plaintiff does not actually dispute this fact.

10

defendant Scharffenberg removed the catheter (DSUF 25).[3]

Later in the evening, Plaintiff was seen in the Treatment and Triage Area complaining that he had a painful erection. DSUF 34.[4] Defendant Scharffenberg was called, and he gave orders to transport Plaintiff by ambulance to Mercy Hospital Bakersfield. DSUF 35. At Mercy Hospital, Plaintiff was treated for a priapism. DSUFs 38-41. He was later transferred to Tri-City Medical Center for a higher level of care. DSUF 42.

The issue now before the Court is whether defendant RN Soto's refusal to remove the catheter on December 9, 2013, constituted deliberate indifference to Plaintiff's serious medical needs,[5] and whether the manner in which defendant Dr. Scharffenberg removed the catheter on December 10, 2013, constituted deliberate indifference to Plaintiff's serious medical needs.[6] As to both Defendants, the Court finds that Plaintiff has failed to submit sufficient evidence on which a jury could reasonably find that either defendant acted with deliberate indifference to Plaintiff's serious medical needs.

As to defendant Soto, even if Plaintiff can show that he had a serious medical need for the catheter to be removed immediately, which the parties dispute, there is no evidence that defendant Soto was deliberately indifferent to that need applying the legal standards discussed

---

[3] While Plaintiff lists this fact as disputed in his opposition (ECF No. 152, p. 8), Plaintiff does not actually dispute this fact.

[4] The exact time Plaintiff began complaining of the painful erection is disputed.

[5] Plaintiff alleges that he has a right to refuse medical treatment, and he is correct. "[A] competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." Cruzan by Cruzan v. Dir., Missouri Dep't of Health, 497 U.S. 261, 278 (1990). However, Plaintiff is not proceeding on a Fourteenth Amendment claim against defendant Soto. Moreover, it was not defendant Soto who inserted the catheter, and defendant Soto was not permitted to remove Plaintiff's catheter without a doctor's order. Thus, it does not appear that Plaintiff would have a Fourteenth Amendment claim against defendant Soto in any event.

[6] The Court notes that, in his opposition to Defendants' motion for summary judgment, Plaintiff appears to allege that defendant Scharffenberg caused a delay in Plaintiff's care after the catheter was removed. (ECF No. 152, p. 5). However, as Defendants point out, "Plaintiff is not proceeding against Dr. Sharffenberg on this claim and it is absent from the complaint." (ECF No. 154, p. 9). Moreover, Plaintiff failed to submit evidence showing that defendant Scharffenberg knew of and disregarded an excessive risk to Plaintiff's health in relation to these new allegations.

Additionally, Plaintiff alleges that defendant Scharffenberg was "sadistic" in his removal procedure. (ECF No. 152, p. 5). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). However, this case is not proceeding on an excessive force claim against defendant Scharffenberg. Moreover, even if it were, Plaintiff submitted no evidence to support his assertion that defendant Scharffenberg intentionally caused Plaintiff pain.

above. It is undisputed that defendant Soto provided treatment to Plaintiff, including examining Plaintiff, providing Tylenol for his pain, and educating Plaintiff regarding his condition.

The Court also finds that it is undisputed that defendant Soto contacted a doctor regarding Plaintiff's condition. While Plaintiff attempts to dispute this fact, Plaintiff has submitted no admissible evidence that contradicts defendant Soto's declaration and Plaintiff's medical records. Declaration of S. Soto, ¶ 5 ("I notified the on-call physician about Mr. Gonzalez's condition, and was informed that, per discharge instructions, the catheter was to remain in place for seven days for treatment of urinary retention."); ECF No. 123-5, p. 4 ("Dr. Igbinosa notified: Tylenol #3 x1 dose in TTA for discomfort/pain, RTC. I/P encouraged to drink more fluids.").

To dispute this, Plaintiff includes his own statement under penalty of perjury that defendant Soto failed to contact a physician, but there is no indication in Plaintiff's declaration that he has personal knowledge of this fact. Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Plaintiff also submits a medical record that he alleges shows that defendant Soto failed to consult with a doctor. (ECF No. 152, p. 18). However, this conclusion is not at all clear from the medical record. It certainly does not say that defendant Soto refused to call a doctor. The Court's best transcription of the handwritten note is as follows:

> 12/9/13  On call provider telephone encounter TTA RN -Standifer
>
> 8:25 pm: Called by TTA RN to [illegible] this 29 y/o inmate earlier seen in the TTA @ 1630 hrs for flu, OTMR—Urology. Hx of urinary retention, s/p insertion of [illegible] foley catheter. Per d/c instruction, Foley to remain in place until urology [illegible] in 7 ds.
>
> Per RN, i/p presently on the yard but received call from yard clinic that i/p asking to d/c foley.
> Discussed with TTA RN;
> -- i/p to keep foley as instructed
> -- can get T#3 for pain (in TTA)

-- f/m yard MD in am
-- call with Qs.

It is unclear who wrote this note as the signature is illegible, although it says "TTA MD" in the upper right corner, indicating that a doctor was involved and may have been the author. In any event, this note supports defendant Soto's account of the facts, including that a doctor had previously instructed the catheter to remain, that someone (potentially defendant Soto or R.N. Standifer) consulted with a doctor or medical professional in response to Plaintiff's complaints, the appropriate course of treatment was discussed, and the author of the note and an R.N. decided on a medical response to Plaintiff's complaints that included keeping in the catheter at that time. While Plaintiff may disagree with this course of treatment, this note contradicts Plaintiff's claim that defendant Soto was deliberately indifferent to Plaintiff's complaints about his catheter.

Accordingly, as Plaintiff submitted no admissible evidence that defendant Soto was deliberately indifferent to his serious medical needs, the Court finds that summary judgment should be granted in favor of defendant Soto.

As to defendant Scharffenberg, Plaintiff also failed to provide sufficient admissible evidence that a reasonable jury could find that defendant Scharffenberg was deliberately indifferent to Plaintiff's medical needs.

Plaintiff concedes that defendant Scharffenberg removed the catheter based on Plaintiff's own request, against a doctor's earlier medical advice. Plaintiff bases his claim on defendant Scharffenberg's manner of removing the catheter.

As noted above, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To prevail, Plaintiff must show that defendant Scharffenberg subjectively knew of and disregarded an excessive risk to Plaintiff's health. Toguchi, 391 F.3d 1051 at 1057.

After review of all evidence presented, the Court finds that there is no evidence that defendant Scharffenberg's removal method, even if painfully or potentially negligently

performed, indicated deliberate indifference to Plaintiff's medical needs. Plaintiff submits evidence that he was in pain during the removal procedure, and that afterwards he bled from his penis. (ECF No. 152, p. 4). He also submits evidence that defendant Scharffenberg was not kind during the removal procedure. Defendant Scharffenberg allegedly "badgered" Plaintiff, saying things such as "cut the show," "what[']s with the show," and "you need to be more mature." (ECF No. 152, p. 11). But there is no evidence that defendant Scharffenberg knew of a less painful method of removal and purposefully chose this method in order to cause Plaintiff pain. Instead, the evidence indicates that defendant Scharffenberg believed that Plaintiff was not in as much pain as Plaintiff alleges. Even if this evidence were true, it merely shows a difference of opinion regarding Plaintiff's symptoms—not that defendant Scharffenberg was aware of a medical need and failed to attend to it. Put another way, although defendant Scharffenberg's comments as alleged by Plaintiff appear mean, they do not indicate that defendant Scharffenberg was deliberately indifferent to Plaintiff's medical needs.

Additionally, Plaintiff failed to submit any admissible evidence to dispute the fact that pain and discomfort can be a regular part of such a procedure. See Declaration of Defendant Dr. Scharffenberg, ¶ 8. While it is possible that the level of pain Plaintiff experienced during the procedure was more than what would ordinarily occur, there is no evidence suggesting that any additional pain was caused by Defendant Scharffeberg's deliberate indifference, rather than Plaintiff's prior medical condition or potentially negligence in the manner of removal. In fact, instead of suggesting that defendant Scharffenberg knew that Plaintiff was in an excessive amount of pain relative to the amount incident to the procedure but did not care, the statements that defendant Scharffenberg allegedly made suggest that he did not believe that Plaintiff was in the amount of pain that Plaintiff was displaying.

Moreover, the fact that defendant Scharffenberg performed the removal at all suggests he was not deliberately indifferent to Plaintiff's medical needs. Plaintiff had requested removal of the catheter against medical advice. Defendant Scharffenberg performed the medical procedure that was requested by Plaintiff. Additionally, it is undisputed that on the evening of December 10, 2013, defendant Scharffenberg ordered that Plaintiff be transported by

ambulance to Mercy Hospital Bakersfield. DSUF 35.  Thus, at most, Plaintiff has submitted evidence of medical negligence, which is not a constitutional violation.

As Plaintiff has failed to provide evidence from which a fair-minded jury could conclude that defendant Scharffenberg was deliberately indifferent to Plaintiff's medical needs in removing the catheter, the Court finds that summary judgment should be granted in favor of defendant Scharffenberg.

Because the Court finds that a fair-minded jury could not reasonably find that Defendants were deliberately indifferent to Plaintiff's serious medical needs, the Court will recommend that Defendants' motion for summary judgment be granted.[7]

## IV. CONCLUSION AND RECOMMENDATIONS

Because Plaintiff failed to submit evidence from which a fair-minded jury could reasonably find that Defendants were deliberately indifferent to Plaintiff's serious medical needs, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 123) be GRANTED; and
2. All pending deadlines be vacated, all other pending motions be denied as moot, and that this case be closed.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven (7) days after service of the objections.

///

///

///

---

[7] As the Court is recommending that summary judgment be granted because a fair-minded jury could not reasonably find that Defendants were deliberately indifferent to Plaintiff's serious medical needs, the Court need not reach the issue of qualified immunity.

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **March 8, 2019**

/s/ *Erica P. Grosjean*
UNITED STATES MAGISTRATE JUDGE